IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ROBERTO A. SANCHEZ GAMINO,

Petitioner,

v.

ERIC HOLDER, Attorney General of the United States, RAND BEERS, Acting Secretary of Homeland Security, TIMOTHY AITKEN, Field Office Director, United States Bureau of Immigration and Customs Enforcement,

Respondents.

No. CV 13-5234 RS

**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

I. BACKGROUND

Petitioner Roberto Sanchez Gamino was 17 years old when he was admitted to the United States as a permanent resident in 1993. Since his arrival in this country, petitioner has been convicted twice for Domestic Violence in violation of California Penal Code Section 273.5(e), a crime for which he is subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(ii)[1] and § 1182(a)(2)(e)(i), along with various other convictions. He was last convicted on October 6, 2003, when he was admitted to probation for four years and sentenced to serve 180 days in county jail. More than nine years later, in August 2013, he was arrested by Immigration and

---

[1] Unless otherwise noted, subsequent statutory references are to Title 8 of the United States Code.

Customs Enforcement (ICE) agents at his home. He remains in ICE custody in San Francisco and has petitioned this court for release or a bond hearing.

According to the government, Sanchez Gamino is subject to mandatory detention pursuant to § 1226(c) and therefore is not entitled to a bond hearing, in contrast to individuals detained pursuant to § 1226(a). The question of whether § 1226(c) applies when detention is effected some period after an individual's release from criminal custody has divided the federal courts. The Ninth Circuit has not yet addressed this issue. Consistent with the recent decision from this district in *Espinoza v. Aitken*, No. 13-512, 2013 WL 1087492 (N.D. Cal. Mar. 13, 2013), petitioner is entitled to relief in the form of a bond hearing. Accordingly, the Petition for Writ of Habeas Corpus will be granted in part and denied in part for the reasons explained below.

## II. BACKGROUND

Sanchez Gamino is a native and citizen of Mexico. (*See* Pet. Ex. A ("Notice to Appear").) He first entered the United States as a lawful permanent resident at El Paso, Texas in March 1993. In May 1999, petitioner was convicted of domestic violence in violation of California Penal Code § 273.5(e). On October 6, 2003, petitioner again was convicted of domestic violence in violation of the same California statute and incarcerated. He was admitted to probation for four years in October 2003 for his most recent conviction, and sentenced to serve 180 days in county jail as a condition of probation. In December 2005, he was ordered to serve an additional 30 days in jail on a probation violation. It is not clear from the record when he was released from state custody, but there is no record here of any subsequent arrest or period of incarceration.

In August 2013—nine years after his most recent conviction and apparently seven years after his most recent period of incarceration—petitioner was arrested while at his home in Arbuckle, Coluso County, CA. (*See* Pet. at ¶¶ 1, 4.) On the same day, ICE initiated removal proceedings and issued a Notice to Appear ("NTA") with the immigration court. (Pet. Ex. A.) The NTA charged him with removability pursuant to § 1182(a)(6)(A)(ii), as an alien convicted of two crimes involving moral turpitude, and § 1182(a)(2)(e)(i), as an alien who has been

convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment. (*Id.*) ICE also issued a Notice of Custody Determination that stated that he was subject to mandatory custody without bond pursuant to § 1226(c). (Pet. Ex. D.) On November 12, 2013, petitioner filed the instant habeas petition. He is presently scheduled for an individual hearing on the NTA on January 6, 2014. (Pet. Ex. A.) Consistent with the provisions of § 1226(c), petitioner has not been afforded any bond hearing.

### III. LEGAL STANDARD

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, not all aspects of an alien's detention fall outside judicial review, even where such detention is the product of the "Attorney General's discretionary judgment." 8 U.S.C. § 1226(e). While "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole," *id.*, this is not such a case. "Although [8 U.S.C.] § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Thus, "aliens may continue to bring collateral legal challenges to the Attorney General's detention authority ... through a petition for habeas corpus." *Casas–Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 946 (9th Cir. 2008). Since the instant challenge implicates only questions of law—and does not challenge a decision by the immigration court under § 1226—it is properly brought before the district court.

### IV. DISCUSSION

The government has classified petitioner as a "criminal alien" under § 1226(c), which provides, in relevant part:

(1) Custody. The Attorney General shall take into custody any alien who—

    (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> *when the alien is released*, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release. The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

(emphasis added). The government so classifies petitioner because his domestic violence convictions render him "inadmissible by reason of having committed any offense covered in section 1182(a)(2)." § 1226(c)(1)(A). According to the government, § 1226(c) applies to any individual convicted of one or more of the specified crimes, regardless of whether that individual is detained immediately following his release from criminal incarceration or at some later time.

Petitioner counters that § 1226(c) does not apply to him because he was not detained "when . . . released" from state custody, but nine years after his sentence was completed. As such, petitioner argues, he is not "an alien described in paragraph (1)" for the purpose of mandatory ongoing detention under § 1226(c)(2).

The Board of Immigration Appeals (BIA) and various federal courts have weighed in on this question, with varying results. Finding that the phrase "when . . . released" was "susceptible to different readings," a majority of the BIA concluded "the statute as a whole is focused on the removal of criminal aliens in general, not just those coming into Service custody 'when . . .

released' from criminal incarceration." *In Re Rojas*, 23 I. & N. Dec. 117 (BIA 2001). As such, according to the majority considering an alien detained two days after his release from state custody, the "when . . . released" clause was not part of the definition of "an alien described in paragraph (1)" and subject to mandatory detention under § 1226(c)(2). A strongly-worded dissent reached the opposite conclusion, finding the phrase "when . . . released" to be "part of the statutory description identifying the aliens whom the Attorney General must take into custody and may not release." *Id.* at 130. While noting the BIA does not have jurisdiction to address constitutional issues, the dissent did take note of the fundamental liberty interest implicated by the mandatory detention scheme insofar as such concerns inform the degree of deference to otherwise ambiguous statutory language. *Id.* at 138–39.

Although the Ninth Circuit has not addressed this question, two other appellate courts have done so, adopting the BIA's interpretation in *Rojas*. *Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012), considered a detainee arrested 17 days after he was convicted of unlawful wounding and grand larceny and sentenced to supervised probation. *Id.* at 377–78. According to *Hosh*, the meaning of § 1226(c) was ambiguous, as "when . . . released" could be read either to mean the moment of release or the ongoing period following the petitioner's release from custody. *Id.* at 379–80 ("To be sure, 'when' in § 1226(c) can be read, on one hand, to refer to 'action or activity occurring "at the time that" or "as soon as" other action has ceased or begun.' On the other hand, 'when' can also be read to mean the temporally broader 'at or during the time that,' 'while,' or 'at any or every time that . . . .'") (citations omitted). The Fourth Circuit therefore deferred to the BIA's interpretation in *Rojas* that criminal aliens are subject to mandatory detention even if they are not detained immediately upon release, an interpretation it found "permissible, and more plausible," in light of the policy considerations underlying § 1226(c). *Hosh*, at 378, 381; see *Demore v. Kim*, 538 U.S. 510, 518 (2003) ("Congress adopted [§ 1226(c)] against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens.")

1 Earlier this year, the Third Circuit reached the same conclusion. *Sylvain v. Attorney Gen. of U.S.*, 714 F.3d 150 (3d Cir. 2013). Sylvian had had numerous run-ins with law enforcement during his time in this country as a legal permanent resident, including a three-year prison sentence for making and selling cocaine, and a one-week jail term for possession in 2003. He was again arrested in 2007 for possessing drugs, when he plead guilty and received a conditional discharge. Four years later, he was arrested by ICE agents and held without a bond hearing under § 1226(c) until the district court granted his habeas petition and ordered such a hearing. The Third Circuit reversed, concluding that neither agency inaction nor mistake extinguished the agency's authority to detain individuals otherwise subject to § 1226(c) simply because detention did not occur immediately upon release. *Id.* at 157, 160–61. Echoing the Supreme Court's interpretation of the Bail Reform Act, the Third Circuit observed: "we see 'no reason to bestow upon [aliens] a windfall and to visit upon the Government and the citizens a severe penalty' by mandating a bond hearing 'every time some deviation from the strictures of [the statute] occurs.'" *Id.* at 159 (quoting *United States v. Montalvo–Murillo*, 495 U.S. 711, 720 (1990)). *Montalvo-Murillo* is "'doubly persuasive in the instant setting,'" according to the Third Circuit, because while the Bail Reform Act balances the interests of both the public and the defendant, "the mandatory-detention statute is intended to protect only the public—detention is mandatory, no matter the perceived flight risk or danger." *Sylvain*, at 159 (quoting *Hosh*, at 382–83).

Numerous district courts have considered this question regarding § 1226(c). Several have adopted the BIA's interpretation . *See, e.g., Mendoza v.* Muller, No. 11-7857, 2012 WL 252188, at *3 (S.D.N.Y. Jan . 25, 2012) (§ 1226(c) is ambiguous, but applies regardless of when individual was detained); *Khetani v. Petty*, 859 F.Supp.2d 1036, 1038 (W.D. Mo. 2012) (even if the statute is ambiguous, the BIA's interpretation is entitled to deference); *Gomez v. Napolitano*, No. 11-1350, 2011 WL 2224768, at *3 (S.D.N.Y. May 31, 2011) ("While the BIA's interpretation may not be the only reasonable construction of the mandatory detention provision, the Court concludes that respondents' interpretation is reasonable and thus defers to that interpretation."); *Sulayao v. Shanahan*, No. 9-7347, 2009 WL 3003188, at *4, *7 (S.D.N.Y.

Sept.15, 2009) (same); *Hernandez v. Sabol*, 823 F.Supp.2d 266, 270–71 (M.D. Pa. 2011) (same); *Diaz v. Muller*, No. 11-4029, 2011 WL 3422856, at *2–3 (D.N.J. Aug. 4, 2011) (same); *see also Garcia Valles v. Rawson*, No. 11-0811, 2011 WL 4729833, at *3 (E.D. Wis. Oct. 7, 2011) ("it is reasonable to conclude that the description of the alien in paragraph (1) does not include the phrase 'when the alien is released'"). Others have not. *See, e.g., Borgarin-Flores v.* Napolitano, No. 12-399, 2012 WL 3283287, *3 (S.D. Cal. Aug. 10, 2012) ("the plain language of the statute is not ambiguous and clearly applies the mandatory detention provision to those aliens who are detained upon release from criminal custody"); *Ortiz v. Holder*, No. 11-1146, 2012 WL 893154 (D. Utah Mar. 14, 2012) ("In light of the plain language of the statute at issue, traditional tools of statutory construction, and the legislative history, the court concludes that the intend [sic] of Congress is unambiguous: Congress intended for mandatory detention to apply only to noncitizens who are detained at the time of their release from criminal custody for an enumerated offense . . . ."); *Quezada-Bucio v.* Ridge, 317 F.Supp.2d 1221, 1229–30 (W.D. Wash. 2004) ("[I]f Congress had intended for mandatory detention to apply to aliens at any time after they were released, it easily could have used the language 'after the alien is released,' 'regardless of when the alien is released,' or other words to that effect.").

A recent decision from this district, issued shortly before the First Circuit's decision in *Sylvain*, persuasively concludes the language of § 1226(c) is not ambiguous, but "requires that an alien be taken into immigration custody at the time the alien is released from criminal custody in order for the mandatory detention provisions of subsection (c)(2) to apply, not at some time in the future, no matter the alien's post-release status." *Espinoza*, 2013 WL 1087492, at *6. Rather than focusing solely on the meaning of "when . . . released," *Espinoza* considers the complete sentence:

> In the statute, the "when released" clause immediately precedes the clause "without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." Reading the complete sentence in a straightforward manner, it is obvious that the two clauses reference distinct periods of time. The latter portion of the sentence describes the period that commences only after release from custody. In contrast, the temporal reference of the "when released"

clause must mean exactly what is states: the time when the alien is actually released from state custody.

*Id.* at *6.

Espinoza further rejects the notion in *Hosh* that such a reading of "when . . . released" runs afoul of the Supreme Court's directive that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 159 (2003); *see Hosh*, at 381–82. *Hosh* is correct that subdivision (c) does not impose a consequence on the agency for noncompliance; but § 1226 as a whole does provide an "implicit consequence" for delayed detention. *Espinoza*, at *7. Where an alien is subject to removal or deportation according to § 1226(c)(1), but is not detained "when . . . released," detention is permissible but subject to the provisions of § 1226(a), including an individualized bond hearing.

It does not follow from the public safety concerns noted in *Hosh* and *Sylvain* that the phrase "when . . . released" precludes some sort of temporal constraint on mandatory detention. Congress may very well have concluded that the category of aliens subject to § 1226(c) on the basis of their criminal history should be detained upon release from custody without an individualized bond hearing because such individuals present a unique flight risk not present in comparison to the remainder of immigration detainees who are afforded such a hearing. That same risk is not necessarily present in individuals detained after years in which they remained in the community without further law enforcement engagement. "By any logic, it stands to reason that the more remote in time a conviction becomes and the more time after a conviction an individual spends in a community, the lower his bail risk is likely to be." *Saysana v. Gillen*, 590 F.3d 7, 17–18 (1st Cir. 2009). Whether the concerns underlying § 1226(c) should inform any bond determination afforded to petitioner is a question not before this court. However, those concerns do not require an interpretation of the statute that fails to give effect to the obvious temporal implication of the provision "when . . . released."

Similarly, although petitioner does not raise any due process challenge to § 1226(c), such concerns, including the risk of erroneous detention, may reasonably inform interpretation of that

statute. While Congress may have considered the risk of erroneous detention to be minimal for individuals detained upon release from criminal custody on specified charges, the same cannot readily be said for those arrested from their homes some years later. On that basis, it is reasonable to read the mandatory detention provision of § 1226(c)(2) to apply only where individuals are detained "upon . . . release," as Congress instructed.

It is not necessary in this case to define precisely the time period to which "when . . . released" should apply or, as the BIA queried, "Would mandatory detention apply only if an alien were literally taken into custody 'immediately' upon release, or would there be a greater window of perhaps 1 minute, 1 hour, or 1 day?" *Rojas*, 23 I. & N. Dec. at 124. As the Fourth Circuit observed, "Congress's command to the Attorney General to detain criminal aliens 'when . . . released' from other custody connotes some degree of immediacy." *Hosh*, 680 F.3d at 381; *see Rojas*, 23 I. & N. Dec. at 128 ("It was . . . primarily [Congress's] frustration with the Service's inability to achieve the deportation of aliens not in detention that led Congress to create this scheme in the first place. It therefore does not seem likely that Congress would have based the success of its newly created scheme on a requirement that the Service perform at a very high level of efficiency."). However, just as the court in *Ortiz* concluded that a four-year delay between an individual's release from custody and his detention was "not reasonable under any definition of the phrase 'when . . . released,'" (*Ortiz*, at \*3 n.6), so here, too, is the eight year delay between petitioners release from state custody and his detention by immigration authorities outside of any reasonable interpretation of the clause. As such, § 1226(c) cannot be read to apply to petitioner.

This is not to say that the immigration authorities lack any legal authority to detain petitioner, but only that their authority is limited to that provided by the more general § 1226(a). As such, he is not entitled to immediate release. However, any continued detention of petitioner must be in accordance with the provisions of § 1226(a), including an individualized bond hearing.

## V. CONCLUSION

Based on the foregoing, the Petition for Writ of Habeas Corpus is granted in part and denied in part. Within 30 days from the date this Order is filed, the Government shall afford petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a).

IT IS SO ORDERED.

DATED: December 19, 2013

_____
RICHARD SEEBORG
United States District Judge